**Jose Bugarin LOPEZ, Principal Marvin Miller, Surety, Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 04–81–00201–CR.**

Court of Appeals of Texas, San Antonio.

Sept. 12, 1984.

Marvin Miller, San Antonio, for appellants.

Bill White, Dist. Atty., Susan Reed, Barry Hitchings, Peter Sakai, Asst. Criminal Dist. Attys., San Antonio, for appellee.

Before CADENA, C.J., and CANTU and DIAL, JJ.

## OPINION

CADENA, Chief Justice.

This is an appeal from a summary judgment in the amount of Five Thousand Dollars ($5,000.00), on a bail bond forfeiture with Marvin Miller as surety and Jose Bugarin Lopez as principal. In six grounds of error, appellant Marvin Miller alleges the trial court erred in granting the motion. We affirm the judgment of the trial court.

The record reflects that the case in chief against the principal was called for trial on February 26, 1979, and that he failed to appear and answer. The judgment *nisi* on the bond against the principal and appellant was entered on April 2, 1979. On June 29, 1979 appellant filed his "First amended Answer" to the judgment *nisi*. On September 27, 1979 appellant filed his "Second Amended Answers [sic]" and his demand for a jury trial. On August 31, 1979 the State filed its motion for summary judgment, and on October 2 and November 8, 1979 appellant filed original and amended responses to the motion. On March 5, 1980 the then Presiding Judge H.F. Garcia denied the motion. As a result of this, trial on the merits on the bond forfeiture was set for April 2, 1980. At the trial, the then Presiding Judge James Barlow denied appellant's request for a jury trial, revived the State's motion for summary judgment and granted the judgment, which was entered on May 2, 1980. From this action appellant appeals. We will deal with appellant's grounds of error in a different order than they were presented.

■ Appellant alleges the district court lacked jurisdiction over the forfeiture action in that there were no orders transferring the case from the original magistrate who set the bond to the district court. This argument is without merit. Appellant relies on *Daniels v. State*, 171 Tex.Cr.R. 596, 352 S.W.2d 267 (1961) in support of this proposition. However, *Daniels* dealt with two district courts that had concurrent jurisdiction, while here we have a magistrate and a district court. Once the indictment was filed, the district court automatically obtained jurisdiction and an order transferring the case was not required. *Ex parte Clear*, 573 S.W.2d 224, 229 (Tex.Crim.App. 1978) (en banc) (citing *Baskins v. State*, 75 Tex.Cr.R. 537, 171 S.W. 723 (Tex.Crim.App. 1914)). Appellant's fifth ground of error is overruled.

■ Appellant further alleges that the bond was not sufficient in law because it did not give the principal notice of where to appear nor did it even require him to appear before a court. The bond used in this case is the same bond form used in *Balboa v. State*, 612 S.W.2d 553 (Tex.Crim.App. 1981) (en banc), with the only exception being the changing of the name of the

parties and the charge. The Court of Criminal Appeals found the bond to be sufficient. We are bound by the *Balboa* decision, even if we find the reasoning unpersuasive. Grounds of error numbers three and four are overruled.

 Appellant alleges the trial court erred in reviving the motion for summary judgment after the motion had already been denied. The general rule is that it is error for a trial court to enter a summary judgment on behalf of a party who has not filed a motion therefor. *Dixon v. Shirley,* 531 S.W.2d 386, 387–88 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n.r.e.). However, once a motion has been filed and denied, it is permissible for the judge that denied the motion or the judge to whom the case has been transferred to change or modify the original order, in that a denial of the motion is interlocutory. *Bachman Center Corp. v. Sale,* 359 S.W.2d 290, 291–92 (Tex.Civ.App.—Dallas 1962, writ ref'd n.r.e.). *See Anderson v. Bormann,* 489 S.W.2d 945, 947 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.).

 The remaining two issues, the actual granting of the motion and the denial of a trial by jury, both turn on whether there were disputed facts in issue. Because of this, a properly granted summary judgment automatically results in a proper denial of trial by jury. *Swaim v. State,* 498 S.W.2d 188, 191 (Tex.Crim.App.1973); *see Gulbenkian v. Pennsylvania,* 151 Tex. 412, 252 S.W.2d 929, 931 (1952); *Schroeder v. Texas & Pacific Railway Co.,* 243 S.W.2d 261, 262–63 (Tex.Civ.App.—Dallas 1951, no writ).

 Appellant alleges he raised various fact issues in verified pleadings, but we must disagree. A majority of what he refers to in his brief as fact issues he has correctly acknowledged as "legal reasoning" in his pleadings. In a motion for summary judgment on a bond forfeiture, there are only four fact issues: whether the surety executed the bond, whether the principal's name was called at the courthouse door, whether the principal failed to

appear, and whether he had a valid reason for not appearing. *See Riddle v. State,* 544 S.W.2d 931 (Tex.Crim.App.1977) (denial of execution an affirmative defense); *Swaim v. State,* 498 S.W.2d 188, 192 (Tex. Crim.App.1973) (denial of execution, failure of principal to appear, whether name called at courthouse door, and reason for non-appearance all fact issues). Of these, the only issue appellant attempts to raise is whether the principal's name was called at the courthouse door.

The first question, however, is whether appellant's answer to the motion was sufficient to raise this fact issue. There is little doubt that appellant's pleadings leave much to be desired. They appear to be boiler-plate type forms that are filed in response to any and all bond forfeiture cases with visible lines and spaces for filling in the names of the parties, the offenses and the dates. Appellant filed two responses to the motion and labeled the latter as "Defendant-Surety's Response to Amended Motion for Summary Judgment," but since the record reflects no amended motion, we must treat appellant's pleading as an amended answer to the motion for summary judgment. TEX.R.CIV.P. 62.

 There are numerous errors in appellant's answer to the motion. Appellant states in his amended answer that the contents of his answers to the judgment *nisi* "are hereby adopted by reference as part of this response . . . ." This incorporation, however, was improper and did not result in the raising of any fact issues. *Pickering v. First Greenville National Bank,* 495 S.W.2d 16, 19 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.). The effect was to tender the pleadings, in this case the original answers, as summary judgment evidence, when in fact they cannot so be considered. *Id., Hidalgo v. Surety Savings & Loan Association,* 462 S.W.2d 540 (Tex. 1971). Since the answer to the motion absent the incorporation fails to raise any fact issues, the granting of the State's motion was proper.

If we assume the incorporation was proper, appellant's answer would still be defi-

cient in that he failed to either show or attest that the affidavit was made on personal knowledge and that he was competent to testify as to the facts. *See Youngstown Sheet & Tube Co. v. Pennsylvania,* 363 S.W.2d 230 (Tex.1963). Subsection e of Rule 166–A has always required that opposing affidavits be made on personal knowledge and failure to so do does not create fact issues. TEX.R.CIV.P. 166–A(e); *see Pickering v. First Greenville National Bank,* 495 S.W.2d 16, 19 (Tex.Civ.App.— Dallas 1973, writ ref'd n.r.e.).

The jurat in both the answers to the judgment *nisi* and the motion for summary judgment is as follows:

> Before me, the undersigned authority, a Notary Public in and for Bexar County, Texas, on this day personally appeared
>
> Marvin Miller
>
> who, being by me first duly sworn, under oath state [sic] that the matters, allegations, facts, and grounds and prayers contained in the foregoing pleadings are true and correct.

This clearly lacks a showing of personal knowledge.

The actual fact allegation by appellant is as follows,

> In this respect, Defendant-Surety shows the court that the court did not cause the Defendant-Principal's name to be called in an audible voice at the courthouse door of the Bexar County Courthouse in San Antonio, Texas.

This is also clearly insufficient to raise a fact issue. Appellant only states conclusions and not specific facts that form the basis of the conclusions. *See Crain v. Davis,* 417 S.W.2d 53 (Tex.1967). He does not state how he knows the principal's name was not called. Because, neither the jurat or the affidavit exhibits any personal knowledge, the judgment of the trial court is affirmed.

CANTU, Justice, concurring.

I write only to express my feelings about a compelled result which is clearly wrong inasmuch as binding authority unnecessarily departs from sound legal reasoning.

In addressing appellant's fourth ground of error, the majority has decided that the bond is proper in law based on *Balboa v. State,* 612 S.W.2d 553 (Tex.Crim.App.1981) (en banc). However, I question the correctness of *Balboa* and would follow Judge Onion's dissent. *Id.* at 558–61 (Onion, J., dissenting). In deciding *Balboa,* the Court of Criminal Appeals extended the doctrine of waiver into an area previously covered by the doctrine of strict construction of statutes and ignored over one hundred years of cases on point in ruling contrary to them.

Not only was the law solidly entrenched in Texas jurisprudence prior to *Balboa* but the sound reasoning of Texas decisions on the matter has been adopted by various jurisdictions and repositories of the law. *See Dudley v. United States,* 242 F.2d 656 (5th Cir.1957); *La Grotta v. United States,* 77 F.2d 673 (8th Cir.), *cert. den. sub nom., Quigley v. United States,* 296 U.S. 629, 56 S.Ct. 152, 80 L.Ed. 447 (1935); *Joelson v. United States,* 287 F. 106 (3rd Cir.1923); *State v. Sorensen,* 48 Utah 663, 160 P. 1181 (1916); 8 AM.JUR.2d, *Bail and Recognizance,* § 111 (1980).

The Texas bond requirements statute has remained virtually unchanged since first enacted in 1856. Originally, the requirements for bonds were included in the act that defined the office and duties of sheriffs. In that act, the sheriff was given the authority to take bond from a defendant "conditioned that he will appear at the district court of the proper county at the next term thereof ...." Law of May 12, 1846, § 9, 1846 Tex.Gen.Laws 267–68, 2 H. GAMMEL, LAWS OF TEXAS 1573–74 (1898).

Twelve years later the various provisions dealing with criminal procedure were codified and the bond statute established. The pertinent codified provision stated:

> 5. That the bond state the time and place when and where the accused binds himself to appear, and the Court before which he is to appear. In stating the time it is sufficient to specify the term of

the court; and in stating the place it is sufficient to specify the name of the Court and of the County.

Law of February 15, 1858, ch. 151, § 1, 1858 Tex.Gen.Laws 233, 4 H. GAMMEL, LAWS OF TEXAS 1105 (1898).

In 1879, the statute was amended by adding, "or magistrate" after "Court" in both sentences. TEX.CODE CRIM.PROC. art. 273 (1879). In 1933 "of" was eliminated from "of the County" in the last sentence. Act Amending Article 273, C.C.P., Relating to Bail Bonds, ch. 82, § 1, 1933 Tex.Gen.Laws 176. The most recent amendment came in 1965, when the second sentence was replaced by, "[t]he bond shall also bind the defendant to appear before any court or magistrate before whom the cause may thereafter be pending at any time when, and place where, his presence may be required under this Code or by any court or magistrate;" Requisites of a Bail Bond, ch. 722, § 1, 1965 Tex.Gen.Laws, 375.

The earliest reported bond forfeiture case that deals with the issue at hand occurred in 1849, in which the supreme court stated, "[A] statutory bond, to be valid and effectual as such, must in every essential particular strictly conform to the statute." *Lawton v. State*, 5 Tex. 270, 272 (1849). The court proceeded to hold that a bond payable to the Governor did not satisfy a statute that required the bond to be payable to the State. *Id.*

The first case reported under the compiled Code of Criminal Procedure dealt with a bond that stated the defendant shall "be and appear before the district court for San Augustine county, to be holden in the town of San Augustine." The court held a failure to specify time, either as to next term or a specific date, made the bond unenforceable. *State v. Casey*, 27 Tex. 111, 112 (1863). In 1873 it was held a failure to specify a county or place of appearance also made the bond unenforceable. *State v. Phelps*, 38 Tex. 555, 555 (1873); *Ward v. State*, 38 Tex. 302, 303 (1873).

Following the enactment of a new constitution in 1876, the court of appeals was formed with both civil and criminal jurisdic-

tion. From that point forward, bail bond forfeiture cases were reported as criminal cases. *See Perry v. State*, 14 Tex.Ct.App. 166 (1883); *Hart v. State*, 13 Tex.Ct.App. 555 (1883); *State v. Ward*, 9 Tex.Ct.App. 462 (1880); *Cassaday v. State*, 4 Tex.Ct. App. 96 (1878).

The newly enacted court proceeded to follow the decisions of the Texas Supreme Court. *See e.g., Aber v. Warden*, 49 Tex. 377 (1878); *Gay v. State*, 20 Tex. 504 (1857). In *Littlefield v. State*, 1 Tex.Ct. App. 722 (1877); the defendant was required to appear on a specific date "before M.W., a justice of the peace, precinct No. 2, in and for the county of G." The court held this was insufficient to bind the principal to appear at any particular place, or before any court. Later decisions also followed this trend. *See Wallen v. State*, 18 Tex.Ct.App. 414, 415 (1885) (county named not where indictment presented); *Vivian v. State*, 16 Tex.Ct.App. 262, 264 (1884) (cannot presume D.C. stands for Dimmit County); *Turner v. State*, 14 Tex.Ct.App. 168, 170 (1883) (bail bond statute strictly construed); *Downs v. State*, 7 Tex.Ct.App. 483, 484 (1879) (no criminal court in McLennan County).

In 1891 the constitution was amended and the Court of Criminal Appeals and the courts of civil appeals were created. As with the court of appeals, the new Court of Criminal Appeals followed previous decisions. *See Cena v. State*, 422 S.W.2d 730, 731 (Tex.Crim.App.1967) ("instanter" gave sufficient notice of time); *Landrum v. State*, 171 Tex.Cr.R. 106, 345 S.W.2d 752, 753 (Tex.Crim.App.1961) (permissible to use "criminal" in referring to court); *Cantrell v. State*, 136 Tex.Cr.R. 596, 127 S.W.2d 471, 472 (Tex.Crim.App.1939) (strictly conform with the statute); *Sloan v. State*, 39 Tex. Crim. 63, 44 S.W. 1095, 1096 (1898) (impossible date); *Mackey v. State*, 38 Tex.Crim. 24, 40 S.W. 982, 982–83 (1897) (date to appear was before bond).

Even at times when this court previously has had to construe the bond statute, precedent was followed. *See Sheppard v. Gill*, 58 S.W.2d 168, 171 (Tex.Civ.App.—

San Antonio 1933), *aff'd*, 126 Tex. 603, 90 S.W.2d 563 (1936) (damage suit for false arrest; bond statute must be strictly followed and bond signed only by principal unauthorized); *Limburger v. State*, 260 S.W. 227, 228 (Tex.Civ.App.—San Antonio 1924, no writ) (equitable action to set aside judgment; year omitted, but same year as when bond executed intended).

In 1967, the first signs of erosion of the requirement of strict conformance occurred. In *Bowen v. State*, 413 S.W.2d 915, 917 (Tex.Crim.App.1967), it was decided that a bail bond in which addresses of both sureties and principal were omitted was not a sufficient error to exonerate the surety or the principal. *See also Smith v. State*, 566 S.W.2d 638, 639 (Tex.Crim.App. 1978); *Hodges v. State*, 489 S.W.2d 916, 917 (Tex.Crim.App.1973); *Hall v. State*, 485 S.W.2d 563, 564 (Tex.Crim.App.1972).[1]

Based on these decisions, which are contrary to the explicit requirements of TEX. CODE CRIM.PROC.ANN. art. 17.08, § 4 (Vernon 1977), the Court of Criminal Appeals in 1981 decided that section 5 of the statute is also subject to omission. *Balboa v. State, supra* at 555. The court reasoned that inclusion of the time and place where the principal binds himself to appear is for the benefit of the principal, and if he desires this information, he must ask for it. *Id.* The effect of both *Bowen* and *Balboa* is that the principal binds himself to appear at some unknown distant date in the future at a place unknown and that he will never receive notice so he can appear. For what it is worth, the bond may as well be blank or contain a promise to appear if he happens to hear of the date and place of trial.

The court in *Balboa* states that the principal must insist upon this right. The court, however, does not recognize the realities of obtaining release on bond. The magistrate or judge does not take the bond, but rather it is taken by the deputy at the sheriff's office. The deputy may have no idea what court the defendant is to appear in or the time the defendant is to appear, especially if the bond is executed in the early morning hours. The principal certainly has no better knowledge than has the deputy.

The holding of the court places yet another additional burden upon the principal and his surety which is not contemplated by statute or rules and that is, how to register an objection in order to prevent waiver.

The approval by the Sheriff's department is an approval of their own instrument and of the signatures affixed by the parties. No provision is made for recording an objection to the instrument as prepared by the Sheriff's deputy other than a refusal to sign with the concomitant result of having the bond disapproved for failure to sign.

If a waiver is to occur, it should be on the part of the State for approving a defective bond and not upon the principal and surety for abiding by the actions of the approving agent. *See Ex parte Tartar*, 278 Mo. 356, 213 S.W. 94 (Mo.1919) for an excellent discussion on the duty of the approving agent, the principal and surety, and the applicability of the waiver doctrine.

The result of the *Balboa* case mirrors the concern of the Texas Court of Appeals back in 1883, where it was stated,

Any latitude allowed to officers whose duty it is to take bonds, in departing from the terms required by the statute in the structure and framing the bond, will be an encouragement to a further disregard and inattention to its requisitions.

*Turner v. State*, 14 Tex.Ct.App. 168, 170 (1883).

This court should not be required to correct the mistakes of those that receive bonds by ruling it was the principal's fault for not insisting on completion of the bond.

---

1. These cases deal with a failure to provide an address. Clearly the giving of an address, which is peculiarly within the knowledge of the principal and surety can neither enlarge nor detract from an undertaking otherwise complete and binding in every other respect. This is particularly so in that failure to receive notice gives rise to a defense for not appearing, but is not of itself a bar to recovery on the bond in the absence of good cause. Notice by way of address is certainly only for the benefit of the principal and surety.

Recognizing the binding effect of the *Balboa* decision on this court, I am compelled to concur in the result with extreme reluctance.